## Hays *versus* Gallagher.

1. Defendant, with the consent of a turnpike company, crossed their road with a railroad for his individual use, and raised the bed of the turnpike, passing over it with a bridge. It was the duty of defendant to keep the bridge in repair.

2. The bridge was eighteen feet wide and ten feet long, and originally had rails on each side, which had decayed; the plaintiff was found about midnight on a dark night, lying under the bridge, hurt; he said he had fallen from the bridge, but made no other statement as to how he fell, &c. *Held*, the danger having arisen by the negligence of the defendant, that these facts were evidence for the jury that he had fallen for want of the rails, and that the burden was not on him to show that he was clear of contributory negligence.

3. Beatty *v.* Gilmore, 4 Harris 463; Waters *v.* Wing, 9 P. F. Smith 211, distinguished.

October 12th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* Of October and November Term 1871, No. 112.

[Hays v. Gallagher.]

This was an action on the case, commenced February 26th 1870, by John Gallagher against Jonas H. Hays, to recover damages for injuries from falling from a bridge built by the defendant, on the Birmingham and Elizabeth Turnpike, which had been constructed more than thirty years, under an act of incorporation. The turnpike was located between the coal-mines of the defendant and the Monongahela river. In order to get his coal to the river, the defendant, about 1853, built a railroad from his mines to the river. This road crossed the turnpike. With the consent of the Turnpike Company the defendant raised the bed of the turnpike at the place of crossing and then put a bridge over his railway, making it part of the turnpike; the bridge was about 18 feet in width and 10 feet in length; at one side of it the excavation was 8 or 9 feet, at the other side 4 or 5 feet. When first built there was railing on each side, which at the time plaintiff was hurt had been torn or worn away. In October 1869, Higgins, a neighbor of the plaintiff, was called up in the night, about 12 o'clock, by plaintiff's wife, who informed him that plaintiff had fallen from the bridge and was hurt. Higgins went to the bridge and found plaintiff lying under the bridge, badly hurt; he said he had fallen off the bridge; the night was very dark.

There was other evidence as to the plaintiff being found under the bridge, as to the extent of his injuries, and other matters to make out his case; but there was no other evidence as to how the plaintiff came where he was found. The plaintiff was in court during the trial, but was not called as a witness by either party.

The defendant gave evidence in answer to the plaintiff's case, amongst which was evidence for the purpose of showing that with care a person could walk over the bridge, even in a dark night; that the plaintiff lived very near the bridge, and was well acquainted with its condition.

The facts above given and the charge of Judge Sterrett will sufficiently present the case.

The defendant submitted a number of points,—the 5th and 7th, with their answers, are those only necessary to be noticed.

5. The fact that the plaintiff was found in the cut under or near the bridge, between the hours of 11 and 1 o'clock at night, and saying that he had fallen off the bridge—without any explanation of where he had been or was going, or for what purpose he was on the bridge at that hour, or of the time or manner or cause of his falling off—are not sufficient to sustain his action for injuries occasioned by his fall.

Answer: "This point is refused pro forma. We will reserve the question of law raised by the point for future consideration in case your verdict is such as to require it. The facts stated in the point are not controverted."

7. The fact that the plaintiff, who is familiar with all the facts

[Hays *v.* Gallagher.]

in this case, and the only one who can explain them, and is a competent witness in the case, being in court during the whole trial and not called as a witness for the plaintiff, is a circumstance so suspicious that the jury may properly give it great weight on the question of plaintiff's contributory negligence.

" This point is affirmed with this qualification—that the jury may properly give some weight to the fact that the plaintiff, who was a competent witness, was present in court during the trial, and has not been called to explain how the accident occurred."

The court (Sterrett, P. J.) also charged :—

" The plaintiff in this case seeks to recover damages for injuries which, he alleges, were occasioned by the negligence of the defendant.

" It is incumbent on him to prove that the defendant was guilty of negligence, and that in consequence of this negligence alone, he received the injuries complained of. The first question then for you to determine, from the evidence, is whether the defendant was or was not guilty of negligence. It is claimed that it was the duty of the defendant to put and keep the bridge in question in such a condition that persons travelling along the turnpike in the ordinary way would not be exposed to personal injury. It appears from the evidence, that some seventeen or eighteen years ago, the defendant constructed a coal railroad across the turnpike, by a cut about six feet deep at the upper side, and eight or nine feet deep at the lower side—that across this cut and about the centre of the turnpike, he constructed a bridge of heavy plank, about eighteen feet in length—that on the sides of this bridge, he put up a railing, or guard, which remained there until some time before the plaintiff was injured. The evidence further shows, that this coal railroad was made by defendant for his own convenience, for the purpose of transporting coal from his land on the upper side of the road, down toward the river, and that the land at that point on both sides of the turnpike belongs to him. If you find these to be the facts, and that the road was constructed by the defendant for his own use and convenience, it was his duty to construct the bridge in such a manner, and see that it was kept in such repair, that the safety of persons passing along the turnpike would not be endangered; and neglect on his part to perform this duty, would be what the law denominates *negligence.* If from the evidence you are unable to say that there was negligence on the part of the defendant, you need not inquire any further. In that event your verdict should be in favor of him. But if you find that there was negligence as claimed, in not constructing and maintaining the bridge across the cut in such a manner as not to endanger the safety of persons passing along the turnpike, and exercising ordinary care and prudence in so doing, you will then inquire whether the injuries complained of by the plaintiff, were caused by such

[Hays v. Gallagher.]

negligence of the defendant or not; and if you find that they were, then the plaintiff will be entitled to a verdict for such sum as will compensate him for the injuries which he sustained *provided* the plaintiff's own negligence, or want of care or prudence (which is the same thing), did not contribute to the accident. If the plaintiff's injuries resulted either in whole or in part from the want of ordinary care and prudence on his own part, he is not entitled to recover any damages."

The verdict was for the plaintiff for $492.91, and the court afterwards entered judgment on the verdict on the reserved question.

The defendant took a writ of error, and assigned for error the answers to the points and entering judgment on the verdict.

*White & Slagle*, for plaintiff in error.—To maintain an action for injuries caused by a defect in the highway, it must appear affirmatively, and the burden of proof is on the plaintiff to show that he was in the lawful use of the highway : Shearman & Redfield on Negligence, § 421, § 414 and note ; Angell on Highways, § 291 ; 2 Hilliard on Torts, 503–5 ; Whitehead *v.* Phila., 2 Phila. Rep. 99 ; Farnum *v.* Concord, 2 N. Hamp. 292. As to the plaintiff's silence, &c., Logan *v.* Mathews, 6 Barr 417. The burden of proof is upon the plaintiff, so far, at least, as to make it the duty of the jury to give a verdict against him, if his freedom from contributory fault remains in doubt: Welling *v.* Judge, 40 Barb. 193 ; Waters *v.* Wing, 9 P. F. Smith 211.

*Hampton & Dalzell*, for defendant in error.—The defendant was bound to build and maintain the bridge so as to give to the public at that point a good and sufficient roadway: Phœnix *v.* Phœnixville Iron Company, 9 Wright 135; 1 Rolle Ab. 368, "Bridges," p. 2; Perley *v.* Chandler, 6 Mass. 454; Dygert *v.* Schenk, 23 Wendell 446; Woodring *v.* Forks Tp., 4 Casey 355.

It is not incumbent on the plaintiff to prove his exercise of the ordinary care to avoid the injury, but the proof of the want of it on the part of the plaintiff lies on the defendant. He who avers a fact in excuse of his own misfeasance, must prove it: Beatty *v.* Gilmore, 4 Harris 463 ; Waters *v.* Wing, 9 P. F. Smith 211. It was not negligence in the plaintiff to go on the bridge, even though he was aware of its unsafe condition : Humphreys *v.* Armstrong County, 6 P. F. Smith 204.

The opinion of the court was delivered, October 21st 1872, by SHARSWOOD, J.—It is unnecessary to consider the several assignments of error *seriatim*. There is nothing in any of them which requires discussion except the refusal of the court below to

[Hays *v.* Gallagher.]

affirm the fifth point of the plaintiff in error, and the submission of the case to the jury upon the evidence.

It must be conceded that the bridge erected by the defendant over his coal railway, was at the time of the accident, by which the plaintiff below sustained injury, in an unsafe and dangerous condition—especially to travellers by night.   Originally it was constructed with railings on both sides, but they had decayed or been torn away.   The duty of repair was clearly on the plaintiff in error : Phœnixville *v.* Phœnix Iron Co., 9 Wright 135.   Without these guards it was quite possible that a traveller on a dark night, with every care on his part, might mistake his course and walk over the side of the bridge.   The cut was five or six feet deep, so that the fall would necessarily cause more or less injury.   Even death might well result from such an accident.   It was through the negligence of the defendant that this danger existed.   Nor can there be any doubt upon the evidence that the injury suffered by the plaintiff below did arise in this way.   He was found lying immediately under the bridge, much hurt, upon a very dark night— about midnight.   He declared at the time that he had fallen from the bridge.   It is true, however, that there was no evidence as to the precise circumstances of the accident.   The plaintiff below himself was not examined as a witness, though he was present in court.   It is maintained by the plaintiff in error that this evidence was not sufficient, as it did not show a case clear of contributory negligence.

In Beatty *v.* Gilmore, 4 Harris 463, it was held by this court that in such an action as this, if no facts are proved from which a deduction of want of ordinary care, on the part of the plaintiff, can be drawn, the presumption is against the defendant, whose misconduct rendered the accident possible.   In that case it is remarked by Mr. Justice Bell that " when in the darkness and solitude of the night, one suffers grievous injury from the culpable commission or omission of another, the carelessness which would excuse ought certainly to be of a very gross character, made apparent by direct or circumstantial proof."   There is nothing in Waters *v.* Wing, 9 P. F. Smith 211, which is inconsistent with this doctrine.   That was a case of an injury from an accident in broad daylight.   The plaintiff was riding on horseback on a public road.   The defendant was driving a buggy in the opposite direction ; the shaft of the defendant's buggy ran into and killed the plaintiff's horse.   " It is the duty of a plaintiff seeking to recover," said Chief Justice Thompson, " where the *gravamen* of the action is the alleged negligence of the defendant, to show a case clear of contributory negligence on his own part.   In other words, he must establish a primâ facie cause of action, resulting exclusively from the negligence and wrong of the defendant, before the latter need answer at all.   The learned judge went too far, therefore, we think, in holding as he

[Hays *v.* Gallagher.]

did in effect, in his answer to the point, that the plaintiff was not holden to such a rule, and that the defendant must disprove care, and thus establish negligence on part of the plaintiff. This would be so in a primâ facie case on part of the plaintiff. But he should have so answered the point that the jury might have been left free to consider the defects in the plaintiff's case. If ever there was a case in which this was a duty, it was in this case. The accident occurred in open day, on a broad public highway, by a rider running his horse so hard upon the shaft of a buggy, driven at an ordinary gait, as instantly to kill the horse, though there was plenty of room to pass without obstruction." It is plain that Waters *v.* Wing in no way impinges upon the rule in Beatty *v.* Gilmore, but is entirely accordant with it. If the plaintiff's own evidence discloses facts which prove negligence, it is not necessary that the defendant should prove it. This almost self-evident proposition was subsequently affirmed in Pennsylvania. Canal Co. *v.* Bentley, 16 P. F. Smith 30, while it was at the same time there distinctly ruled that if the plaintiff makes out a primâ facie case the burden is on the defendant to disprove care or show contributory negligence.

Had the plaintiff below fallen from the bridge in question, being of the width of eighteen feet, in broad daylight, there would be great reason for saying that it could only have happened from the want of ordinary care on his part, and to have taken the case from the jury. But certainly such bridges should be constructed and kept in repair so as to be safe for travellers by night as well as by day. But though there was no evidence of the circumstances of the fall from which any inference of negligence upon so dark a night could be inferred, nevertheless the learned judge below instructed the jury that " if the plaintiff's injuries resulted either in whole or in part from the want of ordinary care and prudence on his own part he is not entitled to recover any damages." In answer to one of the points he had also said " that the jury might properly give some weight to the fact that the plaintiff, who was a competent witness, present in court during the trial, had not been called to explain how the accident occurred." If the plaintiff below had made out a primâ facie case, without his own testimony, he was certainly not bound to offer himself as a witness. The defendant might have called and examined him. Of all this the plaintiff in error has certainly no right to complain.

Judgment affirmed.

Thompson, C. J.—It seems to me under the facts in this case, viz.: that the bridge was only eight or ten feet long and was eighteen feet wide, and that the plaintiff was perfectly well acquainted with it, that some evidence ought to have been given to clear him of negligence; for want of this, I dissent from the affirmance of the judgment.